No. 22 Civ. 02945 (LGS)

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

────────────────────────────

KHAIRUL ANNAM and NAHEED AFROZ,

Plaintiffs,

–against—

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF
BUILDINGS, MELANIE E. LA ROCCA, Commissioner, TIMOTHY E.
HOGAN, MATTHEW MILLNER, LEONID MILLER, YEGAL
SHAMASH, GEOFFREY B. EISELE, JOSEPH ACKROYD, KEVIN
SCHULTZ, MATTHEW DIBONO, LISTORIEL VASQUEZ,

Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Mustapha Ndanusa, Esq.
Davis, Ndanusa, Ikhlas & Saleem LLP
26 Court Street, Suite 603
Brooklyn, NY 11242
Tele:   718-783-6819
Fax:    855-852-4742
mdanusa@dnislaw.com

*Counsel for Plaintiffs*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

STANDARD OF REVIEW ................................................................. 5

  A. SAC SUFFICIENTLY STATES A CLAIM ................................. 5

    UPON WHICH RELIEF CAN BE GRANTED ............................. 5

     i.   Standard of Review for Motion to Dismiss .................................... 5
     ii.  Pleading Standard – De Minimis; Prima Facie Not Required ....................... 6

LEGAL ARGUMENT ...................................................................... 6

  A.   Plaintiffs Timely Filed Their Notice of Claim ................................. 6
     i.   Governor's Executive Orders Tolled Plaintiffs' Filing ............................ 6
     ii.  Plaintiffs Timely Filed Notice of Claim for Abuse of Process ..................... 7
     iii.  Plaintiffs Timely Filed Notice of Claim for  Intentional Infliction of
         Emotional Distress ............................................................ 9
     iv.  Plaintiffs Timely Filed Notice of Claim for  Negligent Hiring, Training, and
         Supervising ................................................................. 9

  B.   Plaintiffs Timely Filed Their Common Law Claims ........................ 10

  C.   Plaintiffs SAC Sets Forth Plausible Facts Sufficient to State their Common Law
     Claims ........................................................................ 11
     i.   Reasonable Notice is all that is Required at Pleading Stage ...................... 11
     ii.  Standard of Review for Pleadings ............................................ 12

  D.   The Remaining State Causes of Action Must Survive Defendant's Motion .......... 16
     i.   Plaintiffs' Claim for Negligence in Hiring, Training, and Supervising Satisfies the
         Exception for Respondeat Superior ........................................... 16
     ii.  Plaintiffs' Claim is Meritorious and the Facts of Plaintiff's Case Fall Under the
         Appropriate Circumstances to File an Intentional Infliction of Emotional Distress
         Claim Against Defendants .................................................... 17

  E.   Plaintiffs SAC Sets Forth Plausible Facts Sufficient ....................... 17

    to State their SHRL and CHRL Claims ...................................... 17
     i.   Legal Standard for Employment Discrimination .............................. 18
     ii.  Plaintiff Annam Adequately States a Claim for ............................. 20
         Discrimination Under the NYSHRL and the NYCHRL .......................... 20

CONCLUSION ........................................................................... 25

**TABLE OF AUTHORITIES**

**Case**                                                               **Page**

Arista Records Ltd. Liab. Co. v. Doe, 604 F.3d 110, 120 (2d Cir. 2010)……………………… 12

Ashcroft v. Iqbal, 129 S. Ct 193 7, 1949 (2009)……………………………………………………… 5

Beckett v Prudential Ins. Co. of Am., 893 F Supp 234, 240 (SD NY 1995)…………………… 23

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)………………………………….. 6, 12

Bevilacqua v. City of Niagara Falls, 66 AD2d 988, 989 (4th Dept 1978)………………....… 16

Board of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 N.Y.2d 397 (1975)………………………………… 13, 15

Boonmalert v City of New York., 2017 US Dist LEXIS 56409, 2017 WL 1378274 (SDNY 2017)………………………………………………………………………………….... 21-22

Cassidy v. Riverhead Cent. Sch. Dist., 128 A.D.3d 996, 11 N.Y.S.3d 102 (2nd Dept 2015]……. 6

Chtchannikova v. City of New York, 138 A.D.3d 908, 30 N.Y.S.3d 233 (2nd Dept 2016)……... 6

Collins v. Indart-Etienne, 59 Misc. 3d 1026, 1048 (Sup. Ct. Kings Cnty. Feb. 5, 2018)…... 21, 22

Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)……………………….. 12

Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994)……………………………………………………. 13

Cruz v. Beto, 405 U.S. 319, 322, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972)……………………… 5

Cunningham v State of New York, 53 NY2d 851, 853, 422 N.E.2d 821, 440 N.Y.S.2d 176 (N.Y. 1981)……………………………………………………………………………………………... 7

Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984)……………………………………………… 13

Deravin v. Kerik, 335 F.3d 195,200 (2d Cir. 2003)…………………………………………… 5

Dillon v. City of New York, 261 A.D.2d 34 (1st Dep't 1999)…………………………………… 16

Dillon v Morano, 497 F3d 247, 251 (2d Cir 2007)……………………………………………... 24

Dimitracopoulos v City of New York, 26 F Supp 3d 200 (ED NY 2004)………………….. 20, 24

Douglas v New York State Adirondack Park Agency, 2012 U.S. Dist. LEXIS 155100, 2012 WL 5364344, *7 (NDNY 2012)……………………………………………….…………….. 7

**Case**                                                                                     **Page**

Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005)…………………………………… 11

Ferrante v American Lung Assn., 90 NY2d 623, 687 NE2d 1308, 665 NYS2d 25 (1997)……. 23

Fincher v Depository Trust & Clearing Corp., 604 F3d 712, 723 (2d Cir 2010)……………… 22

Galabya v NY City Bd. of Educ., 202 F3d 636, 640 (2d Cir 2000)…………………………… 23

Geisler v. Petrocelli, 616 F.2d 636,639 (2d Cir. 1980)………………………………………... 4

Golston-Green v. City of New York, 184 A.D.3d 24, 37-38 (2d Dep't 2020)………………… 21

Gomes v Avco Corp., 964 F2d 1330, 1333 (2d Cir 1992)......................................................... 20

Gorokhovsky v New York City Hous. Auth., 552 Fed Appx 100, 102 (2d Cir 2014)…………. 21

Harper v. New York City Housing Authority, 673 F.Supp.2d 174 (S.D.N.Y. 2009)………..…… 5

Harrington v. City of New York, 157 A.D.3d 582, 584 (1st Dep't 2018)……………… …. 21, 24

Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)…..…... 4

Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)…………………………………………..… 5

Ji Sun Jennifer Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP, 120 A.D.3d 18, 26 (1st Dep't 2014)……………………………………………………………………………………… 21

Kaplan v NY City Dept. of Health & Mental Hygiene, 142 AD3d 1050, 1051 (2d Dept 2016)……………………………………………………………………………………… 25

Karoon v. New York City Transit Authority, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)………….. 16

Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)………………….. 11

Koerner v State of N.Y., Pilgrim Psychiatric Ctr., 62 NY2d 442, 446, 467 N.E.2d 232, 478 N.Y.S.2d 584 [1984])…………………………………………………………………… 19

Kolja v R.A. Cohen & Assoc., Inc., 2017 NY Slip Op 30873[U], *22, 2017 NY Misc. LEXIS 1609 (NY County 2017)…………………………………………………………………... 22

Kronos, Inc. v AVX Corp., 81 NY2d 90, 94, 612 NE2d 289, 595 NYS2d 931 (1993)………… 9

Mastrodonato v Town of Chili, 39 AD2d 824, 825 (4th Dept 1972)…………………………... 16

**Case**                                                                                                    **Page**

Marwood Mechanical, Inc. v. Davis & Warshow, Inc., 40 A.D.2d 900 (2d Dep't 1975)……… 13

McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283, n. 11, 49 L. Ed. 2d 493, 96 S. Ct. 2574 (1976)…………………………………………………………………….. 18

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, (1973)……………………………… 18

Mcnamara v. Kaye, 2008 WL 3836024, at *4 (E.D.N.Y. 2008)………………………………… 5

PAGE ABN Amro Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 227 (2011)…………………… 19

Pagliarulo v. Pagliarulo, 30 A.D.2d 840 (2d Dep't 1968)………………………………………… 13

Passucci v Home Depot, Inc., 67 AD3d 1470, 1471, 889 NYS2d 353 (2009)………………... 8

Petit v Dept. of Educ. of the City of NY, 177 AD3d 402, 403 (1st Dept 2019)……………... 18

Sacay v Research Found. of City Univ. of N.Y., 193 F Supp 2d 611, 634 (ED NY 2002).... 22-23

Schiano v Quality Payroll Sys., 445 F3d 597, 609 (2d Cir 2006)……………………………… 23

Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)………………... 18

Scollar v. City of New York, 160 A.D.3d 140, (1st Dep't 2018)…………………………… 16-17

Sedhom v SUNY Downstate Med. Ctr., 2018 NY Slip Op 33210[U] at *13-14 (NY County 2018)……………………………………………………………………………………………… 25

Selkirk v State of New York, 249 AD2d 818, 819, 671 NYS2d 824 (1998)…………………… 7

Shannon v. MTA Metro-North R. R., 269 AD2d 218, 219……………………………………….. 17

Short v. Deutsche Bank Sec., Inc., 79 A.D.3d 503, 505-506 (1st Dep't 2010)………………… 21

Sotomayor v City of NY, 862 F Supp 2d 226, 258 (EDNY 2012)………………………… 22, 24

Swierkiewicz v. Sorema N. A.,534 U.S. 506, 515 (2002)………………………….... 6, 12, 17

Szewczyk v. City of New York, 2016 U.S. Dist. LEXIS 91856, at *15………………………. 25

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981)……………... 18

Thomas v City of Oneonta, 90 AD3d 1135, 1136, 934 NYS2d 249 (2011)…………………… 8

| Case | Page |
|---|---|

_Treglia v Town of Manlius_, 313 F3d 713, 720 (2d Cir 2002)..…………………………………… 24

_Vig v NY Hairspray Co., L.P._, 67 AD3d 140 (1st Dept 2009)………………………………… 18

_Walters v. McMahen_, 684 F.3d 435, 439 (4th Cir. 2012)…………………………………...… 5

_Wanamaker v Columbian Rope Co._, 108 F3d 462, 466 (2d Cir 1997)………………………… 23

_Warner v Druckier_, 266 AD2d 2, 3…………………………………………………………... 17

_Williams v New York City Hous. Auth._, 61 AD3d 62, 872 NYS2d 27 (1st Dept 2009)………. 22

| Statute | Page |
|---|---|

9 NYCRR 8.202.8……………………………………………………………... 6, 10, 19

9 NYCRR 8.202.14…………………………………………………………… 6, 10, 19

9 NYCRR 8.202.28…………………………………………………………… 6, 10, 19

9 NYCRR 8.202.38…………………………………………………………… 6, 10, 19

9 NYCRR 8.202.48…………………………………………………………… 6, 10, 19

9 NYCRR 8.202.55…………………………………………………………… 6, 10, 19

9 NYCRR 8.202.55.1………………………………………………………… 7, 10, 19

9 NYCRR 8.202.60…………………………………………………………… 7, 10, 19

9 NYCRR 8.202.63…………………………………………………………… 7, 10, 19

9 NYCRR 8.202.67…………………………………………………………… 7, 10, 19

9 NYCRR 8.202.72…………………………………………………………… 7, 10, 19

CPLR 214 (2)…………………………………………………………………… 19

Fed. R. Civ. P. 12(b)(6)………………………………………………………...… 4

Fed. R. Civ. P. 8(a)(2)………………………………………………………..… 11-12

General Municipal Law § 50-e………………………………………………… 6, 10

NYC Administrative Code § 8-107 [7]……………………………………………………….. 22

NYC Administrative Code 8-502 [d]…………………………………………………………. 19

## **PRELIMINARY STATEMENT**

The full set of facts are thoroughly elaborated in Plaintiff's Second Amended Complaint (herein, "SAC"), but for purposes of this motion, the key points will be discussed herein. See **Exhibit 1** to the Declaration of Stephen M. Suhovsky's in Support of Defendant's Motion to Dismiss (herein, "Stephen M. Suhovsky's Declaration"). Plaintiff Annam was working for Defendant City of New York's (herein, "Defendant City") Department of Buildings' (herein, "DOB") Construction Safety Enforcement (herein, "CSE") unit, as an administrative engineer, since about 2013. SAC at ¶ 25. On or about March 15, 2017, Defendant Mathew Millner (herein, "Millner") instructed Plaintiff Khairul Annam (herein, "Annam") to issue a violation upon a registered African American architect within the CSE. SAC at ¶26. Upon review, Annam determined that the violation was meritless and went against DOB's policy, so he refused to issue the violation. SAC at ¶26-28. Following Annam's refusal, Defendant Millner threatened to report Annam to DOB's Office of Internal Affairs and Discipline (hereinafter "IAD"). SAC at ¶28. Following Annam's refusal, Defendant Millner threatened to report Annam to IAD. SAC at ¶28. Furthermore, Defendant Millner issued a false evaluation report upon Plaintiff Annam. SAC at ¶32. This evaluation against Annam was blatantly false because non-party Ismail Ghouse (herein, "Ghouse"), who was Plaintiff Annam's direct supervisor, was instructed to draft the evaluation report against Annam but he refused. SAC at ¶32. Therefore, Defendant Millner himself wrote the false evaluation report and forced non-party Ghouse to sign it. SAC at ¶32.

Following Defendant Millner's threat and false evaluation report upon Annam, Defendants Millner, as the Director of Annam's CSE unit, Geoffrey Eisele (herein, "Eisele"), as CSE's Executive Engineer, and Leonid Miller, as CSE's Assistant Commissioner, began the inspection processes to retaliate against Plaintiff Annam, Plaintiff Naheed Afroz (herein "Afroz"), and their

family. SAC at ¶29, 51, and 103. Once Annam informed DOB's IAD that he intended on renovating his residence located at 20-40 28th Street, Astoria, NY 11105 (hereinafter, the "Primary Residence"), as per DOB's policy in order to recuse himself from all work, the Defendants found their means of harassment. SAC at ¶35.

On or about November 27, 2018, DOB's CSE sent three inspectors to the Primary Residence and issued a Stop Work Order (herein, "SWO"). SAC at ¶ 38. There is no doubt that Defendant Eisele was responsible for the inspection because Plaintiff Annam overheard Defendant Eisele instructing three inspectors to inspect the Primary Residence. SAC at ¶40. Initially, this violated two DOB policies because it was Defendant Eisele's team conducting the inspections and they were required to recuse themselves to avoid any conflicts of interest. SAC at ¶38-40. Furthermore, the inspections violated DOB's policy because per DOB's code, SWOs cannot be issued on construction sites where over ninety (90%) percent of the work is complete – and the renovations at the Primary Residence were indeed over ninety (90%) percent complete. SAC at ¶41. On or about January 3, 2918, Non-Party Norman Ho (herein, "Norman"), being supervised by Defendant Eisele, issued twenty-six (26) additional objections to the construction at the Primary Residence, which were initially approved by DOB's Queens Borough Office prior to the start of the renovations. SAC at ¶48-51, 71.

In or around January 2019, Plaintiff Annam was demoted to the less prestigious position with the DOB's Construction Safety Compliance Unit (hereinafter "CSC"), just three days after his direct supervisor, Ghouse, retired from his position as Assistant Chief Engineer of the CSE. SAC at ¶52-54. Plaintiff Annam, being the most senior and most qualified, if not overqualified, licensed Engineer to assume the role as the Assistant Chief Engineer of the CSE, was bypassed for the promotion. SAC at ¶58, 136. Rather, the promotion went to the third most senior Engineer at

CSE, non-party Austin Allcot. SAC at ¶58-59. Austin Allcott is White and he was promoted after three other minority men, one being Anaam, were bypassed or forced out of their position. SAC at ¶57-62.

The Defendants continued to retaliate and harass the Plaintiffs via their unwarranted inspection at the Plaintiffs' investment property located at 24-45 32nd Street, Astoria, NY 11102 (hereinafter, the "Secondary Residence"). On or about March 13, 2019, Defendant Listoriel Vasquez (herein, "Vasquez") forced himself into the Secondary Residence to conduct his inspection, when Plaintiff Afroz initially requested that Defendant Vasquez inspect the Secondary Residence at a later time. SAC at ¶74-75. Like the Primary Residence, the inspection at the Secondary Residence also violated DOB policies. SAC at ¶73-77. Defendant Vasquez inspected the boiler at the Secondary Residence, when the DOB does not inspect boilers for 1-to-3-unit family homes like the Secondary Residence. SAC at ¶73. In fact, DOB's director of the boiler unit instructed Plaintiff Annam to contact the police department to have the inspector arrested because the inspection would have been unlawful. SAC at ¶73. Nonetheless, Defendant Vasquez ultimately issued a vacate order on the basis that the basement was deemed a cellar, but in truth, the basement at the Secondary Residence was indeed a legal basement. SAC at ¶76-77.

Additionally, Defendant Yegal Shamash (herein, "Shamash") interfered with Plaintiff Annam's employment opportunity with the New York City's Department of Design and Construction (hereinafter, "DDC"). SAC at ¶80. Plaintiff Annam was set to leave the DOB in peace and begin a new career with the DDC on or about June 3, 2019. SAC at ¶79. However, on or about May 29, 2019, Defendant Shamash asked Annam if Ashwani Bedi would be Annam's boss or supervisor at the DDC, to which Annam responded in the affirmative. SAC at ¶80. The very next day, Plaintiff Annam was told that the DDC was delaying the joining date and thereafter,

rescinded their job offer because there was an alleged internal investigation against Annam within the DOB – which was entirely false. SAC at ¶80.

After months of checking in with Defendant Joseph Ackroyd (herein, "Ackroyd") regarding the approval of Annam's work, Ackroyd finally approved the permits for Annam's renovations at the Primary Residence on or about January 13, 2020. SAC at ¶86. However, Ackroyd told Annam that Defendants Miller, Eisele, and non-parties Brower, Lore, and Gonzales were not granting Ackroyd's approval of lifting the SWO. Furthermore, in or around February of 2020, Defendant Kevin Schultz stated that there were new rules and regulations regarding the renovations at the Primary and Secondary Residence, which were only applicable to Annam, his properties and nobody else. SAC at ¶87. On or about March 5, 2020, Plaintiffs were able to meet the standards of these "new rules and regulations," as the SWO and vacate order were effectively removed from the Primary and Secondary Residence, respectively. SAC at ¶87-88. However, by this point, the Plaintiffs have suffered irreparable damage, both financially and emotionally. SAC, generally.   The acts Annam suffered at Defendants' hands were instigated by Annam's refusal to wrongly write-up an African American architect simply because, as must be assume given no violations were committed, he was African American.   Was transpired thereafter was racially motivated as we saw Annam and other employees lose out on promotions that went to their White subordinate.

## STANDARD OF REVIEW

**A.      SAC SUFFICIENTLY STATES A CLAIM
        UPON WHICH RELIEF CAN BE GRANTED**

  **i.      Standard of Review for Motion to Dismiss**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636,639 (2d Cir. 1980). In considering a motion to dismiss, a court must **presume all factual allegations of the complaint to be true** and **must draw any reasonable inferences in favor of the nonmoving party**. Cruz v. Beto, 405 U.S. 319, 322, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972) (**emphasis added**).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct 193 7, 1949 (2009). As such, the plaintiff must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Id. at 1964-65. This does not, however, require heightened pleading standards. Rather, the Second Circuit has interpreted that language to require a flexible plausibility standard, "which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible, rather than to mandate a 'universal standard of heightened fact pleading.' "Mcnamara v. Kaye, 2008 WL 3836024, at *4 (E.D.N.Y. 2008) (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).

### ii.     Pleading Standard – De Minimis; Prima Facie Not Required

"[T]he pleading requirements in discrimination cases are very lenient, even de minimis." Deravin v. Kerik, 335 F.3d 195,200 (2d Cir. 2003). However, a plaintiff need not even establish a prima facie case at the motion to dismiss stage. Harper v. New York City Housing Authority, 673 F.Supp.2d 174 (S.D.N.Y. 2009). Rather, a plaintiff need only show that his claims are plausible. Id.

"To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiffs claim 'across the line from conceivable to plausible.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A Plaintiff need not establish a prima facie case at the pleading stage in discrimination cases, the claim must merely be "facially plausible," and give "fair notice ... of the basis for the claim." See Swierkiewicz v. Sorema N. A.,534 U.S. 506, 515 (2002).

## **LEGAL ARGUMENT**

### A.     **Plaintiffs Timely Filed Their Notice of Claim**

### i.     **Governor's Executive Orders Tolled Plaintiffs' Filing**

Service of a notice of claim within 90 days after accrual of the claim is a condition precedent to the commencement of a tort action against the City of New York or a public corporation (see General Municipal Law § 50-e; see also Cassidy v. Riverhead Cent. Sch. Dist., 128 A.D.3d 996, 11 N.Y.S.3d 102 [2nd Dept 2015]; Chtchannikova v. City of New York, 138 A.D.3d 908, 30 N.Y.S.3d 233 [2nd Dept 2016]).

Furthermore, on or about March 20, 2020, Governor Cuomo issued Executive Order No. 202.8, providing in pertinent part that, "**any specific time limit for the commencement, filing, or service of any legal action**, **notice**, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the … civil practice law and rules … or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, **is hereby tolled** from the date of this executive order until April 19, 2020." (Executive Order [Cuomo] No. 202.8 [9 NYCRR 8.202.8] [**Emphasis added**]).   **This toll was extended** through several subsequent Executive Orders, the last of which remained in effect **until November 3, 2020** (see Executive Order [Cuomo] Nos. 202.14 [9 NYCRR 8.202.14]; 202.28 [9 NYCRR 8.202.28]; 202.38 [9 NYCRR 8.202.38]; 202.48 [9 NYCRR 8.202.48]; 202.55 [9 NYCRR 8.202.55]; 202.55.1 [9 NYCRR 8.202.55.1]; 202.60 [9 NYCRR 8.202.60]; 202.63 [9 NYCRR 8.202.63]; 202.67 [9 NYCRR 8.202.67]; 202.72 [9 NYCRR 8.202.72] [**Emphasis added**]).

Here, the notice of claim was filed on April 2, 2020. See **Exhibit B** to Stephen M. Suhovsky's Declaration. Since the Executive Governor's Orders tolled the filing of the notice of claim starting from March 20, 2020, which was thirteen (13) days before Plaintiff's filing of the notice of claim, Plaintiffs' claims must have accrued within ninety (90) days from March 20, 2020. In other words, Plaintiffs' claims must have accrued no later than December 21, 2019. As detailed below, Plaintiffs' common law claims all began to accrue after December 21, 2019, or are allowed via the continuing wrong doctrine.

### ii.     Plaintiffs Timely Filed Notice of Claim for Abuse of Process

"Accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor." Cunningham v State of New York, 53 NY2d 851, 853, 422 N.E.2d 821, 440 N.Y.S.2d 176 (N.Y. 1981). "[A]n abuse-of-process claim may be ripe upon the issuance

of the process in question, but that the accrual date (for purposes of a statute of limitations) as a matter of policy is effectively tolled until the termination of the proceeding in which the process was issued" (Douglas v New York State Adirondack Park Agency, 2012 U.S. Dist. LEXIS 155100, 2012 WL 5364344, *7 [NDNY 2012]).

Furthermore, the continuing wrong implemented by the Defendants, pursuant to the Abuse of Process claim, continued until Defendants ceased their audits of the Primary and Secondary Residences. SAC at ¶ 89. The continuing wrong doctrine is "employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act" (Selkirk v State of New York, 249 AD2d 818, 819, 671 NYS2d 824 [1998]). The doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct" (Id. at 819; see Thomas v City of Oneonta, 90 AD3d 1135, 1136, 934 NYS2d 249 [2011]).

Here, the unwarranted stop work order placed upon Plaintiffs' Primary Residence and the false vacate order placed upon the Secondary residence, both of which were motivated by racial animus to prevent Annam from securing a promotion or even alternative work, continued until on or about March 5, 2020. SAC at ¶ 89. Even after Defendant Ackroyd approved Plaintiff Annam's work at the Primary Residence, Defendants Miller, Eisele, and non-parties Brewer, Lore, and Gonzales refused to lift the stop work order, on or about January 24, 2020. SAC at ¶ 86. In or around February of 2020, Defendant Schultz explicitly created new rules for Plaintiff Annam and stated that these rules were applicable to Plaintiff Annam and nobody else. SAC at ¶ 87. Since Defendants Miller, Eisele, and Schultz are liable to Plaintiffs for Abuse of Process for actions that occurred after December 21, 2019, Plaintiff's notice of claim for Abuse of Process was timely. Furthermore, the remaining Defendants, via the continuing wrong doctrine, are also liable for the

roles they held since the issuance of the false stop work order at the Primary Residence and vacate order at the Secondary Residence. SAC at ¶ 35, 41, 42, 48, 52, 71, 72, 81, 82, 83, and 84. Accordingly, Plaintiffs timely filed their notice of claim for Abuse of Process.

### iii. Plaintiffs Timely Filed Notice of Claim for Intentional Infliction of Emotional Distress

A cause of action alleging intentional infliction of emotional distress accrues on the date of injury (see Passucci v Home Depot, Inc., 67 AD3d 1470, 1471, 889 NYS2d 353 [2009]). As discussed below, Defendants intentionally inflicted emotional distress upon the Plaintiffs via the issuance of the false stop work order at the Primary Residence and vacate order at the Secondary Residence. Hence, Defendants' infliction of emotional distress began as early as July 2018 (SAC at ¶ 35) and continued until on or about March 5, 2020. SAC at ¶ 89. Defendants Miller and Eisele remain liable for IIED for their refusal to lift the stop work order, on or about January 24, 2020 (SAC at ¶ 86), and Defendant Shultz also remains liable for creating new rules specifically for Plaintiff Annam in or around February 2020. SAC at ¶ 87. These Defendants are liable as their actions occurred after December 21, 2019. The remaining Defendants, via the continuing wrong doctrine, are also liable for the roles they held since the issuance of the false stop work order at the Primary Residence and vacate order at the Secondary Residence. SAC at ¶ 35, 41, 42, 48, 52, 71, 72, 81, 82, 83, and 84. Accordingly, Plaintiffs timely filed their notice of claim for infliction of emotional distress.

### iv. Plaintiffs Timely Filed Notice of Claim for Negligent Hiring, Training, and Supervising

"[A] tort cause of action cannot accrue until an injury is sustained . . . That, rather than the wrongful act of defendant or discovery of the injury by plaintiff, is the relevant date for marking accrual" (Kronos, Inc. v AVX Corp., 81 NY2d 90, 94, 612 NE2d 289, 595 NYS2d 931

[1993]). Here, similar to the two previous causes of actions, Defendants Miller, Eisele, and Shultz caused damage to the Plaintiffs on or about January 24, 2020 (SAC at ¶ 86) and in or around February 2020 (SAC at ¶ 87), respectively. These damages clearly occurred after December 21, 2019 – the last date of accrual for notice of claim purposes. Additionally, the damaged caused by the remaining Defendants, via the continuing wrong doctrine, are also applicable since the issuance of the false stop work order at the Primary Residence and vacate order at the Secondary Residence. SAC at ¶ 35, 41, 42, 48, 52, 71, 72, 81, 82, 83, and 84. Furthermore, Plaintiffs continued to sustain injuries until there was a lift on the stop work order and the vacate order, on or about March 5, 2020. SAC at ¶ 89. Accordingly, Plaintiffs timely filed their notice of claim for infliction of emotional distress.

**B.**     <u>**Plaintiffs Timely Filed Their Common Law Claims**</u>

General Municipal Law § 50-i provides that no action alleging damage to personal property caused by the negligence or wrongful act of the City shall be maintained against the City unless the action is commenced within one year and ninety days after the happening of the event upon which the claim is based. Additionally, all filings were tolled from March 20, 2020 until November 3, 2020. In other words, there were 228 days of tolling for all filings in New York State pursuant to Governor Cuomo's Executive Orders. (see Executive Order [Cuomo] Nos. 202.8 [9 NYCRR 8.202.8] 202.14 [9 NYCRR 8.202.14]; 202.28 [9 NYCRR 8.202.28]; 202.38 [9 NYCRR 8.202.38]; 202.48 [9 NYCRR 8.202.48]; 202.55 [9 NYCRR 8.202.55]; 202.55.1 [9 NYCRR 8.202.55.1]; 202.60 [9 NYCRR 8.202.60]; 202.63 [9 NYCRR 8.202.63]; 202.67 [9 NYCRR 8.202.67]; 202.72 [9 NYCRR 8.202.72]).

Here, the Plaintiffs filed their complaint in New York Supreme Court on or about February 2, 2022. See **Exhibit A** to Stephen M. Suhovsky's Declaration. One year and six months prior to

the filing of the complaint is August 2, 2020 – which falls in between the tolling period pursuant to Governor Cuomo's Executive Orders. One year and six months amounts to five hundred and forty-seven (547) days. From the date of the filing of Plaintiffs' Complaint (February 2, 2022) until the last day of tolling pursuant to Governor Cuomo's Executive Orders (November 3, 2020) is a total of four hundred and fifty-six (456) days. Therefore, Plaintiffs' clock for the statute of limitations began to run ninety-one (91) days prior to the first day of tolling pursuant to Governor Cuomo's Executive Orders (March 20, 2020). Accordingly, Plaintiffs' clock for statute of limitations on their common law claims began to run on December 20, 2019.

As mentioned above, all the facts giving rise to Plaintiffs' three common law causes of actions began as early as July 2018 (SAC at ¶ 35) and continued until on or about March 5, 2020. SAC at ¶ 89. Defendants Miller and Eisele damaged the Plaintiffs on or about January 24, 2020 (SAC at ¶ 86), and Shultz caused damaged to the Plaintiffs in or around February 2020 (SAC at ¶ 87) – all which occurred within Plaintiffs' time for statute of limitation purposes. The damages caused by the remaining Defendants, via the continuing wrong doctrine, hold them liable for damaging the Plaintiffs in their involvement of the issuance of the false stop work order at the Primary Residence and the vacate order at the Secondary Residence. SAC at ¶ 35, 41, 42, 48, 52, 71, 72, 81, 82, 83, and 84. For the foregoing reasons, Plaintiffs timely filed their common law claims.

**C.   Plaintiffs SAC Sets Forth Plausible Facts
      Sufficient to State their Common Law Claims**

**i.   Reasonable Notice is all that is Required at Pleading Stage**

Under Federal Rule of Civil Procedure Rule 8(a)(2), the pleading requirement is satisfied by "a short and plain statement of the claim showing that the pleader is entitled to relief." Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). "Such a statement must simply

'give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests.'" Id. Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

Instead, to defeat a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Id. Thus, under this lenient pleading standard, Plaintiffs claims are sufficient to the extent necessary to survive Defendant's motion to dismiss.

**ii.     Standard of Review for Pleadings**

The Twombly Court stated that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." 550 U.S. at 556. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. (emphasis added). (quoting Arista Records Ltd. Liab. Co. v. Doe, 604 F.3d 110, 120 (2d Cir. 2010). In Swierkiewicz, the Supreme Court held that a complaint need not contain specific facts establishing a prima facie case of discrimination to survive a motion to dismiss. 534 U.S. at 511. The Supreme Court held that because "the prima facie case operates as a flexible evidentiary standard, "a complaint need only comply with the pleading standard articulated in Federal Rule of Civil Procedure 8(a) to assert their claims. Id. at 512. Thus, the "complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). "Such a statement must simply 'give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Here, the allegations set forth in Plaintiffs' SAC raise plausible grounds to infer that Plaintiffs are entitled to relief on all of their remaining causes of action. Though unnecessary at this infancy stage of litigation, Plaintiffs' causes of action are well supported by overwhelming facts sufficient to state a claim to relief that is plausible in every respect, and therefore sufficiently meets the pleading standard codified under FRCP Rule 8 and envisioned under Twombly thereby withstands Defendants attack under FRCP 12, et seq. or motion to dismiss.

### a.     *Plaintiffs SAC Supports Strong Inference of Abuse of Process*

A cause of action for abuse of process has three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984) (citing Board of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 N.Y.2d 397 (1975). A cause of action for abuse of process may lie when process is used to obtain the collateral objective of inflicting damage upon a party's business, to compel a part to comply with unreasonable demands or to exact retribution upon a party. See e.g., Marwood Mechanical, Inc. v. Davis & Warshow, Inc., 40 A.D.2d 900 (2d Dep't 1975); Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994) (applying New York law); Pagliarulo v. Pagliarulo, 30 A.D.2d 840 (2d Dep't 1968).

Here, the SAC sets forth plausible facts which demonstrate that Plaintiffs were damaged by an Abuse of Process. The process used for the Primary Residence was the Defendants' inspection and subsequent SWO. SAC at ¶35-52, 63, 81-89. The process used for the Secondary Residence was the Defendants' vacate order. SAC at ¶71-78, 87. The second element of "intent to do harm without excuse or justification" is reasonably inferred for the Primary Residence when the DOB sent three inspectors from Plaintiff Annam's CSE unit, working under Defendant Eisele's

13

supervision, to inspect the Primary Residence. SAC at ¶38, 40-41. Furthermore, non-party Norman's audit team, which issued twenty-six (26) objections associated with the Primary Residence, included Defendants Eisele and Shamash. SAC at ¶48. This constituted even more of a conflict of interest because Defendant Eisele was Plaintiff Annam's CSE executive engineer. SAC at ¶48.

These conflicts of interests are clearly against DOB's policy, as Plaintiff Annam and his team were required to recuse themselves. SAC at ¶35, 36, and 48. It was also against CSE's own internal policy against placing SWOs on construction sites where over ninety (90%) percent of the work is complete – as was the Primary Residence. SAC at ¶41. Accordingly, the Defendants' intent to do harm can reasonably be inferred because there were no justifications or excuses for Defendants to violate two of their own policies just to place a SWO at the Primary Residence on baseless grounds.

The Defendant's intent to do harm can also be reasonably inferred for the Secondary Residence when Defendant Vasquez inspected the boiler at the Secondary Residence, where the DOB does not inspect boilers for 1-to-3-unit family homes. SAC at ¶73. In fact, DOB's director of the boiler unit instructed Plaintiff Annam to contact the police department to have the inspector arrested because the inspection would have been unlawful. SAC at ¶73. Additionally, Defendant Vasquez issued a vacate order for the Secondary Residence on the basis that the basement was deemed a cellar, pursuant to Defendant Vasquez. SAC at ¶76-77. However, pursuant to DOB's own code, the basement was in fact a legal basement. SAC at ¶76-77. Accordingly, the Defendants' intent to do harm can reasonably be inferred because there were no justifications or excuses for Defendants to violate two more of their own policies to issue a meritless vacate order for the Secondary Residence.

The SAC additionally sets forth plausible facts which demonstrate the third element; that the inspections at the Primary and Secondary Residences were used in a perverted manner to obtain the collateral objective of harassing the Plaintiffs and their family, as well as retaliating against Plaintiff Annam. SAC at ¶29, 51, and 103. The harassment and retaliatory nature of the inspections occurred because Plaintiff Annam refused to draft a false violation upon a DOB registered architect. SAC at ¶26. Following Annam's refusal, Defendant Millner threatened to report Annam to IAD. SAC at ¶28. Furthermore, Defendant Millner issued a false evaluation report upon Plaintiff Annam. SAC at ¶32. This evaluation against Annam was blatantly false because non-party Ghouse, who was Plaintiff Annam's direct supervisor, was instructed to draft the evaluation report against Annam but he refused. SAC at ¶32. Therefore, Defendant Millner himself wrote the false evaluation report and forced non-party Ghouse to sign it. SAC at ¶32.

Following Defendant Millner's threat and false evaluation report upon Annam, Defendants Millner, Eisele and Miller (in their capacities as the Director of Annam's CSE unit, CSE's Executive Engineer, and CSE's Assistant Commissioner, respectively), began the inspections processes to retaliate against Plaintiff Annam and harass the Plaintiffs. SAC at ¶29, 51, and 103. It is abundantly clear that the inspections began at Defendant Eisele's demand because Plaintiff Annam overheard Defendant Eisele instructing three inspectors to inspect the Primary Residence. SAC at ¶40. These false and baseless inspections have caused great emotional distress upon the Plaintiffs and their family, and needless to say, have damaged them greatly via financial loss. SAC at ¶105. "Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or **retribution**, the tort of abuse of process will be available to the injured party." Board of Educ. of Farmingdale, supra, 38 N.Y.2d at 404. **Emphasis added**. "[T]he deliberate premeditated infliction of economic injury without economic or social excuse or

justification is an improper objective which will give rise to a cause of action for abuse of process." Id. at 405. For the foregoing reasons, the SAC demonstrates that the Defendants are liable to Plaintiffs for Abuse of Process.

**D.** **The Remaining State Causes of Action Must Survive Defendant's Motion**

    **i.** **Plaintiffs' Claim for Negligence in Hiring, Training, and Supervising Satisfies the Exception for Respondeat Superior**

Defendants allege that Plaintiff's cause of action for negligence in the hiring, training, and supervising of the City's employees cannot be maintained when an employer is already liable under *respondeat superior*. Though the general rule may be that "where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of *respondeat superior*, no claim may proceed against the employer for negligent hiring or retention." Karoon v. New York City Transit Authority, 659 N.Y.S.2d 27, 29 (1st Dep't 1997). Defendants' motion didn't include the remainder of the holding, stating in pertinent part, that an "exception exists to this general principle where the injured plaintiff is seeking punitive damages from the employer." Id., citing Bevilacqua v. City of Niagara Falls, 66 AD2d 988, 989 (4th Dept 1978); Mastrodonato v Town of Chili, 39 AD2d 824, 825 (4th Dept 1972). Plaintiff's SAC seeks just that – punitive and special damages on the claim of negligent hiring, training, and supervising given the "despicable, willful, wanton, and malicious nature of Defendants' conduct." SAC at ¶128. Accordingly, Plaintiff's claim qualifies for the exception as provided for in Karoon and therefore, this cause of action must survive Defendant's motion to dismiss.

**ii.    Plaintiffs' Claim is Meritorious and the Facts of Plaintiff's Case Fall Under the Appropriate Circumstances to File an Intentional Infliction of Emotional Distress Claim Against Defendants**

Intentional infliction of emotional distress claims against government bodies are barred as a matter of public policy (Dillon v. City of New York, 261 A.D.2d 34 (1st Dep't 1999), but courts still reach the merits of the claim and hold agencies accountable where government bodies engaged in extreme and outrageous behavior, such as false accusations. See Scollar v. City of New York, 160 A.D.3d 140, (1st Dep't 2018) (where the court held that a mother sufficiently stated intentional infliction of emotional distress claims against a police officer who allegedly made false child protection complaints). In Plaintiffs' case, the Defendants inspected the Primary and Secondary Residences and issued a SWO and vacate order, respectively, on baseless and meritless accounts. SAC at ¶41 and 73. The Inspections at the Plaintiffs' Residences occurred from about July 2018 (SAC at ¶ 35) and until on or about March 5, 2020 (SAC at ¶ 89), for the sole purpose to harass the Plaintiffs and their family and to retaliate against Plaintiff Annam. SAC at ¶29, 51, and 103. Though the threshold of "outrageousness" is difficult to reach, the Court of Appeals has found claims of intentional infliction of emotional distress where there were claims of  longstanding campaigns of deliberate, systematic and malicious harassment of the plaintiff (see, e.g., Shannon v. MTA Metro-North R. R., 269 AD2d 218, 219 ["a pattern of harassment, intimidation, humiliation and abuse, causing him unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years"]; Warner v Druckier, 266 AD2d 2, 3 ["through various specified acts, deliberately, systematically and maliciously harassed him over a period of years so as to injure him in his capacity as a tenant"]).

**E.    Plaintiffs SAC Sets Forth Plausible Facts Sufficient to State their SHRL and CHRL Claims**

### i.      Legal Standard for Employment Discrimination

Employment discrimination cases are reviewed under notice pleading standards. The Supreme Court held that a complaint alleging employment discrimination "**need not plead [specific facts establishing] a prima facie case of discrimination**" but need **only give "fair notice" of the nature of the claim and its grounds** (Swierkiewicz, 534 US at 514-515 [**emphasis added**]). The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement. In McDonnell Douglas, the Supreme Court made clear that "**the critical issue before us concerned the order and allocation of proof** in a private, non-class action challenging employment discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, (1973) (**emphasis added**). In subsequent cases, the Supreme Court has reiterated that the prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981).

### a.      *Prima Facie Case of Discrimination Not Required to Defeat a Motion to Dismiss*

The Supreme Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, they rejected the argument that a Title VII complaint requires greater "particularity," because this would "**too narrowly constrict the role of the pleadings**." McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283, n. 11, 49 L. Ed. 2d 493, 96 S. Ct. 2574 (1976) (**emphasis added**). Consequently, **the ordinary rules for assessing the sufficiency of a complaint apply**.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. **The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled**

to offer evidence to support the claims") (**emphasis added**). See, also, Petit v Dept. of Educ. of the City of NY, 177 AD3d 402, 403 (1st Dept 2019) ("Crediting plaintiff's allegations for the purpose of this pre-answer, pre-discovery motion to dismiss the complaint . . . we find that the complaint states a [sic] causes of action for discrimination, retaliation and hostile work environment in violation of the New York State and New York City Human Rights laws . . . Fair notice is all that is required to survive at the pleading stage."); See, also, Vig v NY Hairspray Co., L.P., 67 AD3d 140 (1st Dept 2009) (reinstating NYSHRL and NYCHRL discrimination claims dismissed on a motion to dismiss for failure to state a cause of action because "employment discrimination cases are themselves generally reviewed under notice pleading standards.").

As this is not a motion for summary judgment, and no discovery has taken place, Plaintiffs are not required to essentially prove their case prior to any discovery in order to survive a motion to dismiss. The "simplified notice pleading standard" applicable to discrimination complaints is intended precisely to avoid this circumstance. At best, Defendants' factual assertions create a disputed issue of fact, but cannot be accorded deference over Plaintiffs' allegations – particularly upon a motion to dismiss where "Courts must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." PAGE ABN Amro Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 227 (2011)

### b.   *Statute of Limitations*

As an initial matter, an action to recover damages for discriminatory practices under NYSHRL and NYCHRL is governed by a three-year statute of limitation (see CPLR 214 [2]; Administrative Code 8-502 [d]); Koerner v State of N.Y., Pilgrim Psychiatric Ctr., 62 NY2d 442, 446, 467 N.E.2d 232, 478 N.Y.S.2d 584 [1984]). Furthermore, there were 228 days of tolling for

all filings in New York State pursuant to Governor Cuomo's Executive Orders. (see Executive Order [Cuomo] Nos. 202.8 [9 NYCRR 8.202.8] 202.14 [9 NYCRR 8.202.14]; 202.28 [9 NYCRR 8.202.28]; 202.38 [9 NYCRR 8.202.38]; 202.48 [9 NYCRR 8.202.48]; 202.55 [9 NYCRR 8.202.55]; 202.55.1 [9 NYCRR 8.202.55.1]; 202.60 [9 NYCRR 8.202.60]; 202.63 [9 NYCRR 8.202.63]; 202.67 [9 NYCRR 8.202.67]; 202.72 [9 NYCRR 8.202.72]). Additionally, under the continuing violations doctrine, "when a plaintiff experiences a continuous practice and policy of discrimination,... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it" (Dimitracopoulos v City of New York, 26 F Supp 3d 200 [ED NY 2004], quoting Gomes v Avco Corp., 964 F2d 1330, 1333 [2d Cir 1992]).

Here, the Plaintiffs filed their complaint in New York Supreme Court on or about February 2, 2022. See **Exhibit 1** to Declaration of Mustapha Ndanusa in Opposition to Defendant's Motion to Dismiss (herein, "Attorney Declaration"). Three years prior to the filing of Plaintiff's complaint would fall on February 2, 2019, however, considering the 228 days of tolling pursuant to Governor Cuomo's Executive Orders, all discriminatory actions following June 19, 2018 are considered timely. Additionally, pursuant to the continuing violations doctrine, all discriminatory acts are against Plaintiff Annam are considered timely until the last discriminatory act was committed by the Defendants. Since the last discriminatory act against Plaintiff Annam occurred in January 2020 (SAC at ¶70), all the discriminatory acts alleged in Plaintiff's SAC are timely.

### ii.     Plaintiff Annam Adequately States a Claim for Discrimination Under the NYSHRL and the NYCHRL

"A plaintiff states a claim of invidious discrimination under the State and City HRLs by alleging (1) that he/she is a member of a protected class, (2) that he/she was qualified for the position, (3) that he/she was subjected to an adverse employment action (under State HRL) or he/she was treated differently or worse than other employees (under City HRL), and (4) that the

adverse or different treatment occurred under circumstances giving rise to an inference of discrimination." Harrington v. City of New York, 157 A.D.3d 582, 584 (1st Dep't 2018) (citations omitted). Plaintiffs have more than adequately alleged that they were subject to discrimination under the NYCHRL and the NYSHRL. See Id. Defendants do not appear to dispute that Plaintiff Annam has adequately alleged that he is a member of a protected class. Memorandum of Law in Support of Defendant's Motion to Dismiss (herein, "Defendant's Memo") at 18. Nor do the Defendants appear to dispute that Plaintiff Annam was qualified for the position of CSE's Assistant Chief Engineer. See Defendant's Memo, generally. Indeed, Plaintiff Annam has alleged that he is a member of a protected class as he is a Muslim American Bangladeshi. SAC at ¶61, 153. Likewise, that Plaintiff Annam was qualified for the position of CSE's Assistant Chief Engineer is demonstrated by his history of employment with Defendants. SAC at ¶53-62.

### a.    *Plaintiff Annam Has Adequately Alleged that He Was Subject to an Adverse Action and Treated Less Well*

Plaintiffs sufficiently allege that Plaintiff Annam suffered adverse treatment and treated less well because of their race and national origin under the NYSHRL and NYCHRL. An action that is "materially adverse" under the NYSHRL "**can be evidenced by termination of employment, a demotion with a less distinguished title** or decrease in wage or salary, or significantly diminished material responsibilities, etc." Collins v. Indart-Etienne, 59 Misc. 3d 1026, 1048 (Sup. Ct. Kings Cnty. Feb. 5, 2018) (citations omitted) (**emphasis added**). However, "under the City Human Rights Law, in order to demonstrate liability, a plaintiff need not establish that she or he was subjected to a 'materially adverse' change to terms and conditions of employment, but only that she or he was subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic." Golston-Green v. City of New York, 184 A.D.3d 24, 37-38 (2d Dep't 2020) (citing Harrington, 157 A.D.3d at 584; Ji Sun Jennifer Kim

v. Goldberg, Weprin, Finkel, Goldstein, LLP, 120 A.D.3d 18, 26 [1st Dep't 2014]; Short v. Deutsche Bank Sec., Inc., 79 A.D.3d 503, 505-506 [1st Dep't 2010]).

The definition of adverse employment action under the NYCHRL is even broader than that of NYSHRL. (See Gorokhovsky v New York City Hous. Auth., 552 Fed Appx 100, 102 [2d Cir 2014]; Boonmalert v City of New York., 2017 US Dist LEXIS 56409, 2017 WL 1378274 [SDNY 2017].) Under the NYCHRL, the employer's conduct need not be materially adverse to the plaintiff, but merely "reasonably likely to deter a person from engaging in protected activity." (Administrative Code § 8-107 [7]; Fincher v Depository Trust & Clearing Corp., 604 F3d 712, 723 [2d Cir 2010]; Kolja, supra, *22 [to prevail on retaliation claim under NYCHRL, a plaintiff need only show that he took an action to oppose his employer's discrimination and that the employer subsequently engaged in conduct that was "reasonably likely to deter a person from engaging in such action"]; Sotomayor v City of NY, 862 F Supp 2d 226, 258 (EDNY 2012); see Williams v New York City Hous. Auth., 61 AD3d 62, 872 NYS2d 27 [1st Dept 2009] [being assigned duties outside or beneath one's normal work tasks may deter someone from making a complaint]; Kolja v R.A. Cohen & Assoc., Inc., 2017 NY Slip Op 30873[U], 2017 NY Misc LEXIS 1609 [Sup Ct, NY County 2017] [retaliatory acts of threatening plaintiff with termination, change in job responsibilities and work schedule, and issuing warning letter were materially adverse].)

Here, Plaintiff Annam was working with the DOB's CSE unit, as an administrative engineer, since about 2013. SAC at ¶ 25. In this position, Annam would serve as a division engineer in charge of a major division, field division or equivalent. See **Exhibit 2** to Attorney Declaration. In or around January 2019, he was demoted to the less prestigious position with the CSC, just three days after his direct supervisor, Ghouse, retired from his position as Assistant Chief Engineer of the CSE. SAC at ¶52-54. "**A transfer, with a revised job description**, so that the

employee is no longer supervising other employees, as was the case under an old job, **can constitute an adverse employment action**." Collins, 59 Misc 3d at 1049; citing, Sacay v Research Found. of City Univ. of N.Y., 193 F Supp 2d 611, 634 (ED NY 2002) (**emphasis added**).

Furthermore, Plaintiff Annam, being the most qualified licensed Engineer to assume the role as the Assistant Chief Engineer of the CSE as he was the most senior CSE engineer, was bypassed for the promotion. SAC at ¶58. In fact, this position would have gone to Plaintiff Annam if he had not been forced out of the CSE (SAC at ¶58) as he was overqualified for this position. SAC at ¶136. Rather, the promotion went to the third most senior Engineer at CSE, Austin Allcot. SAC at ¶58-59. Galabya v NY City Bd. of Educ., 202 F3d 636, 640 (2d Cir 2000) (**denial of available transfer or delay in reassignment** … **could qualify as material adverse change**); (Schiano v Quality Payroll Sys., 445 F3d 597, 609 (2d Cir 2006); see Wanamaker v Columbian Rope Co., 108 F3d 462, 466 (2d Cir 1997); Ferrante v American Lung Assn., 90 NY2d 623, 687 NE2d 1308, 665 NYS2d 25 (1997) (**emphasis added**).

Additionally, Defendant Shamash interfered with Plaintiff Annam's employment opportunity with the DDC. SAC at ¶80. On or about May 29, 2019, Defendant Shamash asked Annam if Ashwani Bedi would be Annam's boss or supervisor at the DDC, to which Annam responded in the affirmative. SAC at ¶80. The very next day, Plaintiff Annam was told that the DDC was delaying the joining date and thereafter, rescinded their job offer because there was an alleged internal investigation against Annam within the DOB – which was entirely false. SAC at ¶80. "**Poor recommendations, refusals to furnish recommendations**, or **threats to future employers may be adverse** if done in retaliation to a former employee's opposition to an unlawful employment practice" Beckett v Prudential Ins. Co. of Am., 893 F Supp 234, 240 (SD NY 1995).

The Defendants began to discriminate against Plaintiff Annam when he himself objected to the DOB's unlawful employment practice. On or about March 15, 2017, Defendant Millner directed Annam to issue a false violation upon a registered architect at the DOB. SAC at ¶26. Upon Annam's refusal to issue such a false violation, Defendant Millner turned around and issued a false violation upon Plaintiff Annam. SAC at ¶28-29, 32-34. This retaliatory act by Defendant Millner was the first of many discriminatory and retaliatory acts committed against Plaintiff Annam and his family as described herein. SAC at ¶34. Such discriminatory and retaliatory acts led to Plaintiff Annam's demotion, failure to receive promotion, job interreference at the DDC, and ultimately, Annam's departure from the DOB. "Negative employment evaluation letters may be considered adverse if they trigger other negative consequences to the terms and conditions of a plaintiff's employment (Treglia v Town of Manlius, 313 F3d 713, 720 [2d Cir 2002]; Dimitracopoulos v City of New York, 26 F Supp 3d at 214, such as a diminution of wages or demotion or change in job title (Dillon v Morano, 497 F3d 247, 251 [2d Cir 2007]; Sotomayor v City of New York, 862 F Supp 2d at 254.

For the foregoing reasons, Plaintiffs have sufficiently alleged that Plaintiff Annam was subject to adverse employment actions and treated less well for purposes of the NYSHRL and NYCHRL.

### b.   *Plaintiffs Have Adequately Alleged Facts to Support an Inference of Discrimination*

Plaintiffs have clearly demonstrated that the "adverse or different treatment occurred under circumstances giving rise to an inference of discrimination." See Harrington, 157 A.D.3d at 584. "'An inference of discrimination can arise from circumstances including, but not limited to, the employer's … **more favorable treatment of employees not in the protected group**; or the

sequence of events leading to the plaintiff's discharge.'" <u>Szewczyk v. City of New York</u>, 2016 U.S. Dist. LEXIS 91856, at *15 (**emphasis added**).

Here, Plaintiff adequately plead facts showing that the Defendants provide "more favorable treatment" of white employees over employees of color. SAC at ¶61-62 and page 11, footnote 1. Specifically, Imran Akond (herein, "Akond"), the second most senior licensed engineer at the CSE after Plaintiff Annam, was also forced out of the CSE. SAC at ¶60-61. Akond was also a Muslim American Bangladeshi, like Plaintiff Annam. SAC at ¶61. Furthermore, Bert Thomas, an unlicensed black engineer, was also forced out of CSE by Millner even before Annam and Akind suffered the same fate. SAC at ¶62. Additionally, Faisal Ahmed, Naweed Chaudhri and Khalek Eid, as South-Asian American Muslims, were also forced out of the DOB via means of discrimination. SAC at page 11, footnote 1.

Accordingly, Plaintiffs have adequately alleged facts to support an inference of discrimination for purposes of the NYSHRL and NYCHRL. To the extent that Defendants dispute these factual allegations by, inter alia, claiming that Plaintiffs are simply listing out "grievances he had while working at the DOB," those are factual issues which are improperly raised on a motion to dismiss. See Defendant's Memo at 22; see also <u>Kaplan v NY City Dept. of Health & Mental Hygiene</u>, 142 AD3d 1050, 1051 (2d Dept 2016); <u>Sedhom v SUNY Downstate Med. Ctr.</u>, 2018 NY Slip Op 33210[U] at *13-14 (NY County 2018).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that this Court deny Defendants' motion to dismiss the SAC for the remaining Defendants and causes of action.

Dated: September 27, 2022
Brooklyn, NY

                    /s/ Mustapha Ndanusa
                    DAVIS NDANUSA IKHLAS & SALEEM LLP
                    MUSTAPHA NDAUSA, ESQ.